UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID L. CAMPBELL, | ) | CASE NO. 1:08 CV0824 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| SHIRLEY WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is *pro se* plaintiff David L. Campbell's March 31, 2008 complaint, as amended on April 16, 2008.[1]  Mr. Campbell seeks relief from this court for alleged violations of his civil rights and 'acts of fraud' committed by defendant Shirley Wilson, Manager at Morning Star Towers in Cleveland, Ohio.  He seeks $10,000.0 "per violation," as well as punitive damages.

---

[1]  The amended complaint is more correctly characterized as a supplemental complaint because it contains allegations concerning matters which occurred subsequent to the filing of the original complaint. *See* FED.R.CIV.P. 15(d). Moreover, while an amended complaint normally supersedes the original complaint and renders it of no legal effect, Mr. Campbell's amended complaint specifically refers to and adopts by reference the earlier pleading. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985); *see Turner v. Whitehorn*, No. 98-6635, 1999 WL 1336074, at *2 (6th Cir. Dec 21, 1999)(amended complaint did not void original complaint where amended complaint refers to the earlier pleading and adopts it by reference). Therefore, the court may consider the original complaint.

*Background*

Mr. Campbell asserts he has resided in Morning Star Tower, a HUD controlled senior residence, since May 1, 2004 without ever missing or being late in making a rental payment. He maintains that the defendant deprived him of $500.00, "a 10,000 mistake calculating income from Soc. Sec benefit[s] and AARP-20-hr-wk. Job pay at the old $5.15-rete [sic]." (Comp. at 1.) It appears Mr. Campbell may have mistakenly made seven rental payments in the amount of $352.00, "render[ing] approx. ($2500.00)." (Compl. at 1.) Even though he wrote six letters of complaint to the assistant manager at the time, "Sandra," no response was received. Finally, Ms. Wilson "rendered a frivolous, (adjustment) setting rent at $218.00." (Am. Compl. at 2.) Mr. Campbell maintains that this is "illegal to the 30% rule and Law." (Compl. at 1.) Nonetheless, he alleges the defendant advised him not to pay rent for several months. He claims the defendant took advantage of him not "knowing nothing [sic] about Sec. 8 HUD-Law." (Compl. at 1.)

Attached to Mr. Campbell's amended complaint is an April 2, 2008 letter from C.E.O. Richard K. Courtney of JAE Properties, Inc., a real estate corporation that owns Morning Star Tower. Mr. Courtney's letter responds to Mr. Campbell's complaint to Morning Star that it was "unlawfully" holding $352.00 of his "personal money." (Letter from Courtney to Campbell of 4/2/08, Am. Compl., Atth. One.) Mr. Courtney explained that the $352.00 was Mr. Campbell's security deposit and would be returned to him when he moved from the apartment. He did note, however, that the amount should have been lowered at the same time plaintiff's rental payment was lowered to $218.00. Therefore, Mr. Courtney advised, a refund in the amount of $134.00 was owed to Mr. Campbell.

Mr. Courtney also addressed Mr. Campbell's allegations that: (1) maintenance staff

entered his apartment without authorization; (2) Morning Star management violated numerous laws, codes and statutes; (3) the rental amount he was charged violated HUD regulations; (4) he was denied access to internal management documents. He explained that the maintenance staff was questioned regarding any entries to Mr. Campbell's apartment and they denied entering the property without permission. Mr. Courtney advised that Morning Star would fully cooperate if Mr. Campbell chose to file a police report based on evidence that his apartment was entered without permission.

Stating that the company adheres to all applicable laws and regulations, Mr. Courtney explained that he had no evidence that Morning Star had violations, but added that its legal counsel would respond to any "formalized filings." With regard to Mr. Campbell's claims of potential HUD violations, Mr. Courtney explained that Morning Star management "provided information supporting that they did a correction of your income after you informed them that you were making less than stipulated. Management recalculated your income, which resulted in a rent decrease, and any over payments were credited to your account." (Letter from Courtney to Campbell of 4/2/08, Am. Compl., Atth. One.) His request for internal Morning Star documents was denied as being beyond the scope of what Mr. Campbell was authorized to examine.

In his amended pleading, Mr. Campbell acknowledges receiving the April 2, 2008 letter, as well as a two hour meeting with Ms. Wilson on April 9, 2008. Consequently, he no longer seeks injunctive relief because the defendant advised "'we will straighten this out, you don't have to move' (although I'm moving anyhow, when this is over)." (Am. Compl. at 1.) He then cites 24 C.F.R. 247 to explain "landlord/tenant obligations." This reference is followed by a series of generic statements of a landlord's obligation to his tenant and a tenant's obligation to his landlord. Further, he notes, "HUD form 50059 P-1-of-2 Breeched [sic] Obligation, alleges." (Am. Compl. at 2.) The

pleading ends with the following paragraph: "THE 30 per cent (Of income), DETERMINATION 42 U.S.C. 2437, Pub. Law 105-276, 112 stat. 2518 (As pertain), 'sets a $400.oo [sic] elderly benefit. for tenants Monthly rent.'" (Am. Compl. at 1.) Finally, Mr. Campbell attaches an affidavit recounting a conversation he had with Shirley Wilson regarding discrepancies in his rental payments.

*Standard of Review*

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

*HUD Violations*

Under the Brooke Amendment to the Housing Act of 1937, 42 U.S.C. § 1437a, public housing tenants were conferred the right not to be over billed. *See* 42 U.S.C. §§ 1437 *et seq.,* 1437a; *Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 423-430(1987). The Amendment provides:

> Dwelling units assisted under this chapter shall be
> rented only to families who are lower income families

---

[2] A claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

> at the time of their initial occupancy of such units. A family shall pay as rent for a dwelling unit assisted under this chapter the highest of the following amounts, rounded to the nearest dollar:
>
> > (1) 30 per centum of the family's monthly adjusted income;
> >
> > (2) 10 per centum of the family's monthly income; or
> >
> > (3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

42 U.S.C. Sec. 1437a(a). This authorizes the Secretary of HUD to set rental payments not to exceed a percentage of family income as defined by the Secretary.

While Mr. Campbell claims Morning Star Tower is "HUD property," the protection afforded by the Brooke Amendment is extended to tenants in public housing. The lease requirements for public housing are set forth in HUD's "Regulations Relating to Housing and Urban Development," which mandate that "[a] lease shall be entered into between the PHA [public housing agency] and each tenant of a dwelling unit . ..". 24 C.F.R. §966.4.  Moreover, the regulations entitle public housing tenants to pursue any grievances through the procedure outlined in their lease. This mandate explains: "The lease shall provide that all disputes concerning the obligations of the tenant or the PHA shall (except as provided in § 966.51(a)(2)) be resolved in accordance with the PHA grievance procedures. The grievance procedures shall comply with subpart B of this part." 24 C.F.R. §966.4(n).

From what the court can discern, Mr. Campbell's complaint reveals a dispute between Mr. Campbell and the defendant regarding his reportable income and the appropriate rental

payment in compliance with HUD regulations. At one point, the defendant advised Mr. Campbell that he was underreporting his income and that his rent would need to be adjusted based on his increased income. After contesting the allegation, plaintiff's rental payments were adjusted to reflect the "30% level. $88.00. Yet she first tried a double count of funds banked, already evaluated." (Compl. at 1.) Since that time, it appears he was again accused of under reporting his income and his "rent increase[d] to $94.00 or a yr. or more." (Compl. at 2.) He claims the local HUD office is working with the defendant because it has refused to provide him "grievance form[s]." [3]

As a threshold matter, a public housing tenant's lease agreement is with a PHA. While Morning Star may be a "HUD property," it is not a PHA. Further, there is no indication Mr. Campbell availed himself of any of the grievance procedures which must be set forth in a lease agreement with a PHA. If Mr. Campbell is a public housing tenant who believes there has been a violation of federal housing law, he has failed to state any claim that can be brought against Ms. Wilson, as a private individual. *See e.g. Wright*, 479 U.S. at 374-75 ( recognized claimed housing law violation as cause of action under 42 U.S.C. § 1983).

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken

---

[3] In a letter from Cleveland Area Department of HUD Field Officer Douglas Shelby, dated July 1, 2005, Mr. Campbell was notified that the agency received his request for a complaint form. Explaining that "we do not have a clear understanding of what your needs are," Mr. Shelby asked Mr. Campbell to "write us a letter explaining your complaint."(Letter from Shelby to Campbell of 7/1/05, Am. Compl., Atth. 10.) There is no indication Mr. Campbell followed through on Mr. Shelby's suggestion. Instead, he hand wrote across the bottom of the letter: "They would not send a complain [sic] form." *Id.*

in good faith.[4]

        IT IS SO ORDERED.

                        /s/ Patricia A. Gaughan
                        PATRICIA A. GAUGHAN
                        UNITED STATES DISTRICT JUDGE

Dated: 7/3/08

---

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.